# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

MARTHA ELY v. HARRY J. MYERS, JR.

April 21, 1941.

Record No. 2327.

Present, All the Justices.

*Lucas D. Phillips* and *Stilson H. Hall,* for the appellant.

*Edwin E. Garrett* and *Charles F. Harrison,* for the appellee.

Hudgins, J., delivered the opinion of the court.

This suit was instituted to settle a controversy between Harry J. Myers, Jr., and Martha Ely involving a lease* of real estate and personal property. Soon after this contract was executed J. C. Ely died, leaving to his wife, Martha Ely, the real estate and personal property described. On or before January 31, 1933, the date stated

*"THIS AGREEMENT made and entered into this 24th day of January, 1931, by and between John Ely, Martha Ely, his wife, parties of the first part, and Harry Myers, Jr., party of the second part.

"WITNESSETH: That the said parties of the first part do hereby lease or rent to party of the second part their farm, known as Elmore Farm, situated about one mile northwest of Leesburg and adjoining the lands of Plaster, Frye, Forsythe and others and containing about QW 125 acres, more or less, for a term of twenty-three months, beginning the first day of February, 1931, and ending thirty-first day of January, 1933.

"Party of the second part agrees to rent the above farm and on the following terms and conditions:

"It is agreed and understood by both parties hereto that said dairy cows and equipment, farm horses and machinery shall be considered worth ($2,400.00) and same shall be turned over to party of the second part to carry on the farming and dairy operations, and party of the second part agrees to pay interest on one-half of said valuation at the rate of six (6%) per cent interest or Seventy-two ($72.00) Dollars per year and said interest is to be taken out of monthly milk check; six ($6.00) dollars per month.

"Party of the second part agrees to take good care of cows and dairy equipment, horses and farming implements and return same at end of said lease in as good shape as received with reasonable wear and tear of same while in use.

"Feed that is now on the farm to be appraised and turned over to said second party and said second party shall leave same amount for party of the first part when he leaves said farm and all feed pur-

in the contract for the termination of the lease, the parties agreed to continue operation thereunder. This verbal renewal of the contract continued from year to year until the fall of 1938, when the parties agreed to sever their business relations.

In December, 1938, John R. Clemens and G. Shirley Myers were selected by the parties to appraise the cows, farming tools and machinery, and other personal property then on the Elmore farm and owned jointly by the landlord and the tenant. The appraisers met on the premises and fixed the value of the property pointed out to them as jointly owned at $2,355.75. Mrs. Ely desired to retain this property and agreed to pay Harry J. Myers, Jr., one-half the appraised value therefor. She later refused to pay this sum, or any part thereof, on the ground that Myers owed her $1,200, one-half the

chased for said cows and horses shall be paid for jointly one-half and one-half.

"All coal or fuel that is purchased for dairy and use by said second party to be paid for jointly ½ and ½ by each party.

"All milk and all produce raised on said farm not divided equally or fed to cows and horses shall be sold and all checks and moneys shall be divided one-half and one-half.

"The fields to be planted to crops and kind of crops raised to be agreed upon by both parties, alfalfa seed for 1931 to be furnished by party of the first part.

"All other seeds and fertilizer to be furnished ½ and ½ by each party.

"Party of the first part is to furnish machinery and fuel for filling silo and party of the second part agrees to furnish all labor and all labor for dairy and for farm.

"Party of the second part agrees to haul out manure and kept spread on land, keep up fences, party of the first part furnishing material and to second party to clean fence rows at proper time.

"Electricity to be paid equally ½ and ½ for use in dairy and barn.

"Said first party agrees to bear all loss of cows the first year and (after) first year any cow or cows hurt so as to be sold to butcher after first year, the loss to be shared equally.

"All offspring, calves or colts to be divided equally or sold and proceeds to be divided. Fruit to be gathered by said second party and divided equally.

"WITNESS the following signatures and seals, the day and date above written."

agreed value of the property delivered to his custody in January, 1931. Soon thereafter Myers instituted this suit for the purpose of obtaining a settlement of accounts between him and Mrs. Ely.

After a full hearing, the trial court entered a decree in behalf of Harry J. Myers, Jr., against Martha Ely for the following sums: $1,177.87, one-half the appraised value of the property jointly owned at the termination of the lease; $121.50, one-half the value of the milk sold in January, 1939; and $408, rental of the tenant house on the premises. From this decree Martha Ely obtained this appeal.

The first error assigned is to the refusal of the chancellor to hold that Harry J. Myers, Jr., was liable for one-half the agreed value of the property delivered to him in January, 1931.

The contract contains no express or implied promise on the, part of the tenant to pay any part of the $2,400, the agreed value of the property to be used by the tenant in operating the farm and dairy. He did promise to pay $72 per year for the use of the property. This he paid and continued to pay until by mutual consent the amount was reduced to $36 a year. Possession of the property was given the tenant to use for the mutual benefit of the parties. Ownership of the same remained in the landlord. The tenant agreed "to take good care of cows and dairy equipment, horses and farming implements and return same at end of said lease in as good shape as received with reasonable wear and tear of same while in use."

The evidence introduced by the parties fully sustains the finding of the trial court to the effect that the tenant fully and faithfully discharged the duty imposed upon him by the contract for the keeping and care of the property, and that he had returned it, or so much thereof as remained, to the landlord in good and proper condition.

The property appraised on the termination of the

lease consisted of offspring of the original herd, and cows, farming tools and machinery purchased and paid for jointly by the parties, and used for their mutual benefit. When the appraisers selected were on the farm, the property jointly owned was pointed out to them either by Martha Ely in the presence of Harry J. Myers, Jr., or by Harry J. Myers, Jr., in the presence of Martha Ely.

Mrs. Ely stated that, after this appraisement and after her promise to pay Myers, she was advised by some third person that the tenant owed her $1,200 under the fourth paragraph of the contract. It was after she received this ill-considered advice that she, for the first time, asserted a claim against the tenant for this sum of money. Later, she, without consulting Harry J. Myers, Jr., sold the property as her own. The trial court was clearly right in pronouncing judgment against her for one-half the appraised value of this property.

Another error assigned is to the action of the court in compelling the landlord to account to the tenant for one-half the value of milk sold in January, 1939.

Under the terms of the written contract between the parties, the lease expired on January 31, 1933. They, by mutual consent, continued their relations as landlord and tenant until the fall of 1938, when they agreed to terminate the lease at the end of the term. Mrs. Ely contends that the lease terminated on December 31, 1938. Harry J. Myers, Jr., contends that it expired on January 31, 1939. The parties extended their rights and obligations under the contract, as modified, from year to year. This being true, the new year would begin on February 1st and end on January 31st. Mrs. Ely refused to settle for the one-half value of the joint property or to turn it over to Myers and let him pay her the value of her interest. Under the terms of the lease and the evidence, the trial court committed no error in holding that Myers had a right to remain on the premises and in possession of the property until January 31, 1939.

Martha Ely contends that the court erred in pronouncing judgment against her for $408 in behalf of the tenant for rent collected by her from a third party for use of the tenant house.

The language of the contract demises the entire Elmore farm, containing 125 acres, to the tenant. The language used is broad enough, if literally construed, to give to the tenant the use of all buildings on the premises. But this language must be construed in the light of the conditions and circumstances existing at the time, and as it was understood and acted upon by the parties.

There were two dwelling houses on the farm. One, known as the mansion house, was occupied by J. C. Ely and his family at the time the contract was executed. Myers and his family moved into the other house, referred to in the evidence as the tenant house. Myers at no time claimed the right under the contract to the use of the mansion house. He lived in the tenant house for eighteen months. In the fall of 1932 or 1933 Mrs. Ely spent several months in Florida. While she was gone on this extended trip, she consented for Myers to live in the mansion house. About his time he employed an extra helper on the farm and permitted the helper to live in the tenant house. During this six months' period Mrs. Ely charged Myers $4 per month rent for the tenant house. He at first objected, but in his monthly settlements with Mrs. Ely he, by his acts at least, consented to this arrangement. In the spring of 1933 Myers moved his family back into the tenant house and surrendered possession of the mansion house to Mrs. Ely and her brother's family. A year later, with the consent of Mrs. Ely, Myers moved back into the mansion house and continued to live therein until the contract was terminated. It was during this later period (about four years) that Mrs. Ely, apparently without objection from the tenant, reassumed possession and control of the tenant house, rented it to a third party and collected $8 a month therefor.

Mrs. Ely collected checks for the milk sold, occasionally bought property to be used jointly. Myers bought machinery, tools and cows for the joint use of the parties. Each charged the other for one-half the purchase price of the property so bought for their mutual benefit. Both regarded such property as the property of the partnership. During the entire period of the tenancy the parties made monthly settlements of accounts between them. During this period Myers made no demand upon Mrs. Ely for the rents that she collected for the use of the tenant house.

It thus appears that the parties construed the contract to mean that Myers was to have the use of a dwelling house for himself and family, and that Mrs. Ely was to have the right to use, occupy and rent any other dwellings on the premises. The parties acted upon this construction of the contract for a period of more than six years, during which period the contract thus construed by mutual consent was renewed from year to year. If Myers had intended to compel Mrs. Ely to account to him for the rent collected, he should have asserted this claim before renewing his lease from year to year. This course of dealing, over a period of years, binds the parties to the construction that they have made or acquiesced in, in so far as their right to the use of the dwelling houses on the premises is concerned.

The decree under review should be modified to the extent that it declares Mrs. Ely indebted to Harry J. Myers, Jr., in the sum of $408 as rent for the tenant house. With this modification, the decree of the trial court is affirmed.

*Modified and affirmed.*